Ronald W. Truman (#6450)
Daniel Radford (#15906)
**TRUMAN LAW FIRM, P.C.**
20 North Main, Suite 304
St. George, UT  84770
Telephone:  (435) 986-2222
Facsimile:   (888) 958-0541
Email:  ront@trumanlawfirm.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JACOB M. SCOTT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WINGATE WILDERNESS THERAPY, LLC, a Utah Limited Liability Company,<br><br>Defendant. | **PLAINTIFF'S COMPLAINT**<br><br><br><br><br>Civil No.: 4:18-cv-00002-DN<br><br>Judge:  David Nuffer |

Plaintiff Jacob M. Scott, by and through his attorney, Ronald W. Truman, of the Truman Law Firm, P.C., alleges and complains against Defendant Wingate Wilderness Therapy, LLC as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Jacob M. Scott ("Jacob") is, and was at all times material hereto, a citizen of the State of Virginia.

1

2. Defendant Wingate Wilderness Therapy, LLC ("Wingate") is a Utah limited liability company.

3. Under 28 U.S.C. § 1332(c)(1), Defendant Wingate is a citizen of the State of Utah because it is incorporated in the State of Utah and its principal place of business is in the State of Utah.

4. Defendant Wingate is, and was at all times material hereto, conducting business in the State of Utah.

5. The events described in this complaint, and all acts and omissions complained of herein, occurred in the State of Utah.

6. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Plaintiff brings his complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. On or about March 6, 2015, and for some time before, Wingate was engaged in the "youth program" business as defined in Utah Code § 62A-2-101(4).

9. On or about March 6, 2015, Jacob suffered significant physical injuries while in the care and custody of Defendant Wingate.

## CAUSE OF ACTION
(Negligence and Reckless Conduct)

10. On or about February 21, 2015, Jacob was enrolled in Wingate's wilderness therapy program.

11. On or about March 6, 2015, and for some time before, Wingate was attempting to provide behavioral or mental health services to minors in return for a fee.

12. For Jacob's participation in the wilderness program, Wingate charged Jacob's parents $475 per day, with the first 56 days being paid in advance in the amount of $26,600.00.

13. In addition, Wingate charged Jacob's parents a non-refundable application fee in the amount of $2,500.

14. Before Jacob arrived to participate in Wingate's wilderness program, Jacob's parents paid Wingate the requested $29,100.00.

15. Wingate is licensed for 35 students and the program is expected to last about 8 weeks.

16. Based on the foregoing, Wingate is paid approximately $931,000 every 60 days for providing wilderness services to troubled youth.

17. Wingate has a duty to use reasonable care to avoid injuring those youth participating in its wilderness program.

18. Wingate must adhere to the safety rules outlined in Rule 501-8 of the Utah Administrative Code.

19. A violation of a safety rule, ordinance or law is evidence of negligence unless the violation is excused.

20. Pursuant to Rule 501-1-12 of the Utah Administrative Code, Wingate must not neglect or act in a way that compromises the health and safety of the youth participating in its wilderness program.

21. Pursuant to Rule 501-1-12 of the Utah Administrative Code, Wingate must maintain the health and safety of the youth participating in its wilderness program.

22. Pursuant to Rule 501-1-12 of the Utah Administrative Code, Wingate must protect the youth in its care and custody from potential harm.

23. Pursuant to Rule 501-8-5 of the Utah Administrative Code, Wingate must not expose the youth entrusted to its care to unreasonable risks.

24. Pursuant to Rules 501-8-7, 501-8-8 and 501-2-9 of the Utah Administrative Code, Wingate must properly screen, train and supervise its personnel.

25. Pursuant to Rules 501-2-3 and 501-2-9 of the Utah Administrative Code, Wingate must have adequate staffing and follow a written staff to consumer ratio.

26. Pursuant to Rule 501-8-5 of the Utah Administrative Code, Wingate must have, at all times, at least two staff members, one of which must be a senior field staff member, supervising each youth group.

27. Wingate represents to the general public that it maintains a safe environment for its wilderness program participants.

28. On or about March 6, 2015, Jacob, along with 6 other boys and 2 staff members, went on a day hike.

29. After hiking for a while, the lead staff member left the group, leaving only one staff member with the 7 boys.

30. After hiking for a while, the group noticed a rock formation that the boys wanted to explore.

31. Once the group arrived at the rock formation, some of the boys wanted to climb to the top of the rock formation.

32. The remaining staff member gave the boys permission to climb the rock formation.

33. Before giving permission for the boys to climb the rock formation, the remaining staff member chose not to evaluate the safety of climbing the rock formation.

34. The remaining staff member did not hike the rock formation ahead of the boys or with the boys.

35. The remaining staff member did not provide any direction to the boys regarding the climb.

36. The remaining staff member did not provide any safety gear to the boys for the climb.

37. Four of the seven boys decided to climb the rock formation.

38. The rock formation appeared to be in excess of 70 feet to the top and snow was visible on the rocks.

39. Although the climb was difficult, the four boys made it to the top of the rock formation without injury.

40. The climbing became much more difficult as the boys attempted to climb back down the steep rock formation.

41. The descent from the top was extremely dangerous because the rock formation was dusted with a layer of snow.

42. Because the boy in front of Jacob nearly fell about 50 feet off to the right of the rock formation, and because the rocks were slippery with the snow, Jacob was frightened and told Wingate's staff member that he did not believe he could make it down the steep rocks.

43. By the time that Jacob was attempting to come down the steep rock formation, the second staff member had returned.

44. Wingate's staff members told Jacob to climb down the same place where he had climbed up the rock formation.

45. Neither of Wingate's staff members offered to provide any assistance to Jacob in making his descent down the rock formation.

46. At one point in Jacob's attempt to climb down the rock formation, one of Wingate's staff members told Jacob to climb down from one rock to a rock formation on a lower ledge.

47. When Jacob followed this staff member's instruction and attempted to climb to the lower ledge, Jacob slipped on the snow, lost his footing and fell down the remaining 25 or so feet to the bottom of the rock formation.

48. In this fall, Jacob landed on his left knee, sustaining a "high-energy comminuted left patellar fracture."

49. After Jacob fell, the boys pulled Jacob from the side of the bottom of the rock formation and placed him under a tree.

50. The boys then built a fire to help keep Jacob warm.

51. Help did not arrive for another 2 or 3 hours after Jacob fell.

52. Finally, when help arrived, Jacob was loaded into an off-road vehicle and then transported by automobile to Kane County Hospital in Kanab, Utah.

53. Wingate's staff members involved in the injury that is the subject matter of this complaint, were, at all times material hereto, employees or agents of Wingate.

54. Wingate's staff members involved in the injury that is the subject matter of this complaint, were, at all times material hereto, acting in the course and scope of their employment with Wingate.

55. Wingate's staff members involved in the injury that is the subject matter of this complaint, were, at all times material hereto, motivated, at least in part, to serve the interests of their employer, Wingate.

56. The incidents and actions, or lack thereof, of which Jacob complains herein occurred within the hours of Defendant Wingate's work and within the ordinary and spatial boundaries of the individual staff members' employment with Wingate.

57. Because of the foregoing, the conduct of Wingate's staff members involved in the day hike with Jacob is legally imputed to their employer, Wingate.

58. Defendant Wingate chose not to follow the safety rules designed to keep the youth entrusted to its care safe from potential harm.

59. Defendant Wingate chose to expose the youth entrusted to its care to unreasonable risks of harm.

60. Defendant Wingate has a duty not to act in a way that compromises the health and safety of the youth participating in its wilderness program.

61. Defendant Wingate has a duty to maintain the health and safety of the youth participating in its wilderness program.

62. Defendant Wingate has a duty to protect the youth in its care and custody from potential harm.

63. Defendant Wingate has a duty not to expose the youth entrusted to it to unreasonable risks.

64. Defendant Wingate has a duty to have adequate staffing and to follow a written staff to consumer ratio.

65. Defendant Wingate has a duty to have, at all times, at least two staff members, one of which must be a senior field staff member, supervising each youth group.

66. Defendant Wingate has a duty to use reasonable care to protect the youth entrusted to its care and custody from unreasonable risks of harm.

67. Defendant Wingate breached its duties of care to Jacob by, among other things, (i) allowing the youth to take a detour from the designated route; (ii) allowing the lead staff member to leave the group with only one staff member remaining with the group; (iii) not doing anything to determine whether the climbing of the rock formation would be safe for the youth; (iv) not properly assessing the danger of allowing the youth to climb the rock formation; (v) allowing the youth to climb the dangerous rock formation without supervision; (vi) allowing the youth to climb the dangerous rock formation without any safety gear; (vii) not assisting Jacob with his descent down the rock formation; and (viii) instructing Jacob to climb down the rock formation when and where it was dangerous to do so.

68. Defendant Wingate has a duty to properly screen, train and supervise its personnel.

69. Defendant Wingate, upon information and belief, did not properly screen, train and supervise its personnel.

70. On or about November 2, 2017, Defendant Wingate was requested to preserve "any and all evidence relating to the group's activities of March 6, 2015, including, but not limited to, the hike, the climbing of the rock formation, Jacob's fall, Wingate's response to Jacob's fall and transporting of Jacob to the hospital."

71. On or about November 2, 2017, Defendant Wingate was requested to provide Jacob's lawyer with a copy of its (i) incident or crisis intervention records relating to Jacob's fall and (ii) daily log outlining the activities of March 6, 2015.

72. Defendant Wingate has failed and refused to provide the requested information to Jacob or his lawyer.

73. Defendant Wingate, upon information and belief, has not preserved the evidence relating to the hike, Jacob's fall and his injuries sustained in the fall.

74. Defendant Wingate has chosen not to accept full responsibility for the injuries Jacob received while in the custody and care of Defendant Wingate.

75. Defendant Wingate was negligent and/or reckless because it, among other things, (i) allowed the youth to take a detour from the designated route; (ii) allowed the lead staff member to leave the group with only one staff member remaining with the group; (iii) did not determine whether the climbing of the rock formation would be safe for the youth; (iv) did not

9

properly assess the danger of allowing the youth to climb the rock formation; (v) allowed the youth to climb the dangerous rock formation without supervision; (vi) allowed the youth to climb the dangerous rock formation without any safety gear; (vii) did not assist Jacob with his descent down the rock formation; and (viii) instructed Jacob to climb down the rock formation when and where it was dangerous to do so.

76. Defendant Wingate's conduct as described herein manifests a knowing and reckless indifference toward, and a disregard of the rights of others, including the rights of Jacob.

77. Defendant Wingate's breaches of its duties of care to Jacob were the actual and proximate cause of the injuries complained of herein by Jacob.

78. Defendant Wingate violated one or more of the foregoing safety laws, rules, ordinances or provisions.

79. Defendant Wingate's violation of one or more of the foregoing safety laws, rules, ordinances or provisions was not excused.

80. Defendant Wingate's violation of one or more of the foregoing safety laws, rules, ordinances or provisions is prima facie evidence of Defendant's negligence.

81. Defendant Wingate's violation of one or more of the foregoing safety laws, rules, ordinances or provisions was the actual and proximate cause of the injuries complained of herein by Jacob.

82. Defendant Wingate's knowing and reckless indifference toward and disregard of the rights of the youth entrusted to its custody and care, including Jacob, is the actual and proximate cause of the injuries complained of herein by Jacob.

83. As a direct and proximate result of Defendant Wingate's negligent and reckless conduct, Jacob was injured and has incurred medical expenses in an amount in excess of $300,000.

84. As a direct and proximate result of Defendant Wingate's negligent and reckless conduct, Jacob suffered significant and permanent injury to his body, including his knee.

85. As a direct and proximate result of Defendant Wingate's negligent and reckless conduct, Jacob has sustained bodily injury; permanent disability and bodily impairment; disfigurement; loss of earning potential; past, present and future medical expenses; and other out of pocket expenses and consequential damages in an amount to be proven at trial.

86. As a direct and proximate result of Defendant Wingate's negligent and reckless conduct, Jacob has sustained past, present and future damages including pain and suffering, disfigurement, loss of enjoyment of life, and an increased likelihood of re-injury or aggravation to the injuries received in his fall in an amount to be proven at trial.

87. Jacob is entitled to pre-judgment interest on the special damages assessed pursuant to Utah law, including Utah Code § 78-27-44, as amended.

88. Jacob has been compelled to retain the services of an attorney to pursue this action against Defendant Wingate. Jacob, therefore, should be awarded his reasonable attorneys' fees and costs incurred in connection herewith.

WHEREFORE, Jacob Scott prays for judgment against Defendant Wingate as follows:

a. For compensatory damages for medical costs and expenses, both past, present and future in an amount in excess of $300,000 to be proven at trial;

b.     For general damages for past, present and future pain and suffering, loss of life activities, and other damages in an amount to be shown at trial;

c.     For past, present and future damages including, but not limited to, bodily injury; permanent disability and bodily impairment; disfigurement; loss of earning capacity; past, present, and future medical expenses; other out of pocket expenses and consequential damages; physical pain and suffering; loss of enjoyment of life, and an increased likelihood of re-injury, in an amount in excess of $1,000,000, the exact amounts to be proven at trial;

d.     For punitive damages in an amount sufficient to punish Defendant Wingate for its conduct manifesting a knowing and reckless indifference toward and disregard of the rights of others, including Plaintiff Jacob Scott; and

e.     For pre-judgment and post-judgment interest, reasonable attorney's fees, costs of Court and such other and further relief that the Court may deem just and proper.

DATED this 2nd of March, 2018.

                                          TRUMAN LAW FIRM, P.C.

                                          /s/ *Ronald W. Truman*
                                          Ronald W. Truman
                                          *Attorney for Plaintiff*

**Plaintiff's address:**
Jacob Scott
c/o Ronald W. Truman
Truman Law Firm, PC
20 N. Main Street, Suite 304
St. George, UT 84770